I'll call the next case United States v. McKinney, case number 21-50-74. Good morning, your honors, and may it please the court. My name is Kathleen Chen and I represent the appellate, Mr. Corey McKinney. It is well settled that a defendant is entitled to a It is well settled that the defendant is entitled to a Franks hearing if he makes a substantial preliminary showing that the affidavit in support of the search warrant contained reckless and material misstatements or omissions. And from the record, in this case, that standard is plainly met. Officer Caruso's trial testimony indicated that nobody ever told him they saw McKinney with heroin or the firearms found in the Elgin Street house. That stood in stark contrast with the warrant affidavit, where he attested that an informant told him that McKinney possessed heroin, meth, and firearms at his home. Under these circumstances, remand for a Franks hearing is appropriate. So at trial, Officer Caruso was asked numerous questions about how he came to believe that McKinney possessed the contraband found in the Elgin Street home. When asked if anyone ever told him they saw McKinney with heroin at the house, he didn't say, yes, someone told me that McKinney had heroin there. He said no. And when asked if anybody ever said they saw McKinney with the firearms found in the home, he didn't say, someone told me he had a gun. He just said no. This trial testimony was reliable, sworn evidence that clearly and obviously called into doubt the truthfulness of statements in the warrant affidavit. In which, Counsel, let's assume that there is an inconsistency between the affidavit for the search warrant and the trial. Both statements were made under oath. You're kind of assuming that we should accept the trial testimony and find, therefore, that the affidavit testimony was false. How do we know which of those two is to be relied upon? That's a good question. I have two responses. So first, I think there is reason to accept the trial testimony as more probative because it's even if you consider that we don't know which one is true and which one is false, I still think that the substantial preliminary showing standard is met. So just to return, I think that we can tell that there's a substantial preliminary showing that the warrant affidavit contained reckless and material omissions because of the inconsistencies. And those are the kinds of inconsistencies that as the investigator, Cabezal would surely have known about. He surely would have known. Is there an actual inconsistency? The officer never said in his testimony that the informant had actually seen McKinney with the firearm. Yes, Your Honor. I think that there's a minimum of a substantial preliminary showing of an inconsistency. And I think that because given all of these questions, which we're really getting at, did someone tell you that they saw Mr. McKinney? It's asked in so many different ways. I think it's very strange that Cabezal never once refers to the informant. It's the basis of the affidavit. But isn't that explained by the fact that they didn't want to put the informant on? They didn't want to disclose the informant? Your Honor, that's a possible explanation, but I think that's an explanation that would have to come out at the hearing. And do we need to have a hearing? It's a likely explanation, isn't it? This officer never said in his affidavit that anyone had seen this defendant in possession. It doesn't say that. And you challenged the affidavit as not being, as I recall, specific enough or revealing enough. Reliable enough. You challenged it. That challenge fails. Wouldn't that have been the time to make this challenge? Your Honor, I have sort of two responses. So to go to the question about whether we can just assume that Officer Cabezal is just trying to avoid mentioning the informant. I don't think we can assume that because regardless of whether he's comfortable with revealing the informant, he has an obligation to answer the questions truthfully. He's sworn to answer all the questions honestly. The whole truth is nothing but the truth. And so when he's asked, did anyone tell you these things about McKinney at the house, that is a question that calls for a truthful answer. And if the answer is yes, he's obligated to say yes. And Your Honor, can you remind me what the second part of your question is? I guess my question is, to me, the affidavit is pretty clear that it may be based on secondhand knowledge, which seems to be what you're getting at here is that no one ever actually saw this defendant in possession. Somehow we now have contradictory evidence of that. But to me, it seemed clear from the affidavit that those details were missing from the affidavit. Which you challenged. Yes, Your Honor. I don't think there's any inconsistency between the suppression motion and the Frank's issue. I think that if we're questioning the reliability of the informant and later questioning whether the informant actually made the statements that Caruso said he did in the affidavit, I think that's... Well, is it a surprise? Was it a surprise to you that it appears that the affidavit may have been based on secondhand information? Your Honor, I think generally, informant information is considered more reliable if it's based on... I agree. I agree. But the affidavit was pretty clear. It just generally talked about this informant saying that this defendant possessed, possessed, possessed these various items. It never suggested that this, never suggested the CI had seen this defendant in possession of these items. Yes, Your Honor. You see my point? So I guess I'm struggling to see where the inconsistency is now. Your Honor, I think that to me, it strikes me as unusual that given the course of these questions, there's nothing ever said about someone telling Caruso, even when he's directly asked, did anyone tell you these things about Mr. McKinney? And secondarily, to the extent that there is a substantial preliminary showing, we're not required to prove the Frank's violation in order to be entitled to a hearing. And Your Honor, just to go to the third and fourth error. So just to elaborate, I want to address the government's argument. I do think that this error is plain and that we do make a showing that we've satisfied the plenary standard. The standard for Frank's hearing is well-settled and there's no dispute here that under these specific circumstances, it's appropriate to review for the plain error standard. Do you argue that the warrant would not have been issued if the full disclosure had been made? The warrant only requires probable cause. It doesn't require a proof, you know, absolute proof or beyond reasonable doubt or anything else. Your Honor, I think that would depend on the outcome of the Frank's hearing. So if the outcome of the Frank's hearing establishes that there isn't a statement because nobody ever told, you know, the informant never actually made the statements attributed to him in the warrant affidavit, I think if you take the informant out of the affidavit, there's really no probable cause at all. The warrant or the informant's information is really the core of the warrant affidavit. I don't think there's really anything in addition to what the informant provides. And I think another, you know, so I don't think materiality is really disputed here. However, I think to go to the third column, I mean... Well, but nobody is really saying that it is incorrect that the informant did tell the officer. Is there any proof that the informant didn't say that to the officer? Your Honor, I'm not sure I understand the question. I think that's the Frank's violation, right? So, you know, if there is, we've made the substantial preliminary showing that maybe the warrant affidavit, when it says an informant told me that McKinney had heroin meth, those statements weren't true. And if we were able to prove that violation, those statements come out of the affidavit. And that really doesn't leave anything behind for probable cause. But if there was no objection below, you would have difficulty establishing a plain error. Your Honor, in this case, I think it's undisputed that we can proceed under plain error. And that's you can't bring it on to the Rule 12 issue because Rule 12 says you don't bring it by the deadline. In this case, Rule 12 doesn't apply because this isn't a claim that was reasonably available before trial. And then once you get past Rule 12, then we just apply the regular plain errors statement. And that's not disputed here. The government agrees that we can review for plain error. And if the Frank's hearing had been held, I think the same evidence, for example, showing at least a reasonable probability of prevailing on the Frank's in the prevailing on the Frank's hearing. And if the evidence from the search that's passed, I don't think it's disputed that Mr. McKinney might not have been convicted. The first search is how they uncovered the heroin, the meth, and the drugs that was at the core of the prosecution. And finally... Can you pop back to the plain error? You briefly addressed it. And I do understand your argument, but I'd like to have you respond to the government's argument that the only case law out there, at least that they cited, I think was a Ninth Circuit case suggesting that at least at the post-trial stage, it's basically there is no... They didn't find plain error in a similar situation because they had never applied Frank's in the post-trial stage. I don't know that we have either. What do you say to that argument? I have several. First, I just disagree with the analysis of the Ninth Circuit case. We do plain error cases all the time. And what we're asking is, given well-settled laws clear from the record, that the judge made a mistake. And I think that that's the argument we've made, and that's the plain error standard that should apply. The question isn't so much what you argue, but whether there is a problem. It would have made an error not for the court to have sui sponte conducted a Frank's hearing mid-trial. And I just don't see any case law supporting that that's controlling in the Tenth Circuit. Your Honor, this court has, in fact, reviewed Frank's error as plain error before. There's two cases we cite in the briefs, Wright and Illion. I think, in fact, holding a Frank's hearing mid-trial would proceed as any other complex legal issue that arrives mid-trial. You excuse the jury. And I would just note that, actually, in Frank's itself, the Supreme Court observes or contemplates that Frank's violations can emerge mid-trial. They cite a New Jersey case as an example in a case where an incident of deliberate falsity is revealed through trial testimony. And in that case, the Supreme Court assumes that, of course, this remedy would be pre-trial remedy if you can make that showing before trial. So for all those reasons, I don't actually think there's anything unusual about what we're requesting procedurally. And then just to make sure I cover all my bases, I think this is the kind of error that does seriously affect the fairness, integrity, or public reputation of judicial proceedings. Search warrant applications are made ex parte without any opportunity for defendants to test the veracity of the statements. And that's doubly true when a confidential informant is involved. As your honors have noted, there's a lot of secrecy. And so in this way, the integrity of judicial proceedings and of people's Fourth Amendment rights really does depend directly on law enforcement truthfulness and search warrant affidavits. And so for all these reasons, I would like to reserve the opportunity for questions. May it please the court, we don't want the United States. Something that Ms. Shen, I think is correct, said is correct. That is that if defense counsel had asked during trial for a mid-trial price hearing, that this court could create a rule like the Fourth Circuit adopted in white, that such a mid-trial Frank's hearing is permissible. However, the question that doesn't know asked was whether it was fair, given that this court has not yet adopted that rule to expect a trial court to sui sponte, go back in time, remember, search warrant affidavit. There was a contradiction. And so that's not really what plain error does. That's not really our analysis in plain errors, whether we're demanding or suggesting that the trial court should have done this and should have. We're just asking, was this plain error? And we're asking it based on Frank's itself, which did seem to anticipate that this kind of error could come up at trial. And if there were both a misstatement and it was forfeited, there was no objection, there was no objection to it. So it was forfeited. So we're at plain error. But why, why isn't the law playing that if there were an error here, this was an error, if there was a misstatement or an omission in the, in the affidavit. But because this court has never held that a mid-trial Frank's hearing is appropriate under these circumstances, as the fourth circuit held in white, the ninth circuit's analysis in Resnack, I think, is on all fours with this situation. If this court had previously recognized that such a hearing was necessary, then the failure to hold such a hearing could be plain error. But because the circuit has not adopted a rule that permits a Frank's hearing under these circumstances yet, then in this case, the error is not plain. Now, the other thing that. Well, did this district judge know, is it in the record before this history judge, the affidavit of the officer getting the warrant in the first place? Who issued that warrant? Was it the judge or was it a magistrate? And how do we know that the district judge knew what was in that warrant? A, was it in the record? And B, even if it was in the record prior to this incident or prior to mid-trial, when you say it should have been discussed with a Frank hearing, had that affidavit content ever been brought to the court? Your honor, although the district judge did not issue the warrant in this case, the warrant is in the record at, I believe, 156 and 157 of volume one, because the defense moved to suppress the fruits of the search based not on the informant's basis of knowledge, but based on the informant's reliability. And so the suppression, the affidavit was submitted as an exhibit to the defense suppression motion. So the district judge did have the opportunity to review that affidavit. Again, I say, I don't think the question is whether the district judge could have been expected to rely on this. The question is whether the error is plain under period. And that analysis doesn't require us to decide, did the district court have the opportunity? Did the district court have the affidavit? That's not the question under a plain error analysis. Well, the question under a plain error analysis is whether the law is clear that a mid-trial Frank's hearing is permitted. And doesn't Frank's itself anticipate a mid-trial situation where it arises? Not specifically, but there are cases in other circuits that contemplate that. However, in any event here, there was no error to begin with because a plain reading of the affidavit and officer Quitzel's testimony is that there were no contradictions. In fact, the questions asked of officer Quitzel in the trial were perfectly correct. Defense counsel certainly had read that affidavit and knew that it provided information that the informant had given to officer Quitzel, but never referenced the informant's specific firsthand knowledge. Now that may be a separate problem that was not raised below and was not raised in this appeal, which is whether the affidavit contained sufficient firsthand knowledge to support the search in the first place. But again, I guess that my question was going earlier to Helen's counsel was, I guess that would have been apparent from the affidavit itself, or could have been apparent from the affidavit itself. The language of the affidavit is written entirely in the, the informant told me that Mr. McKinney or that a person being crazy was distributing methamphetamine or some methamphetamine and possessing firearms in the Tulsa County area. The informant told me that defendant is in possession of methamphetamine heroin and firearm and a firearm. And the informant connected it to get gave the nexus to the house, which he would presumably infer that that informant at least saw this individual possession. There are a number of different ways that come by that information. For example, from direct information from the defendant himself, the defendant could have pulled from another drug dealer that he was getting a shipment in or that he had gotten a shipment in and that it was being stored at his stash house at 4331 North Elgin. But all of those things are beyond beside the point because at the end of the day, nothing that officer Whitsell testified to there were no misstatements. Further, there's no evidence in the record that officer Whitsell was in serious doubt as to the truth of the allegations in his affidavit. And because the defense cannot make either of those first two prongs of the Frank showing, there was no error, let alone plain error. And for those reasons, if there are no other questions, I'll see the rest of my time. Judge about no questions. Thank you. Thank you, counsel. Your honor, just points of rebuttal. I think it's important to emphasize that the standard for Frank's hearing at least is a substantial preliminary showing. And you know, the question I would ask you guys to ask yourselves is, ask your honors to ask yourselves is if McKinney had moved for a Frank's hearing on these facts, would he have been entitled to a hearing? And I think that he would have. I also want to respond to the suggestion that these are carefully crafted, crafted questions designed to elicit these responses. I just don't think there's any basis for that in the record. There's nothing that says that the informant didn't have significant knowledge and it's reasonable to assume that he did or reasonable to think that he might have. So these questions could have elicited incriminating responses. I just don't agree with the characterization of this as like a crafty way to avoid mention of the informant. And then finally, just to echo some of the questions your honor was asking, the plain error standard is an appellate standard of review. It's not a referendum on the trial court's performance. And finally, if the government is correct, then the plain error standard can't be applied on these facts, like in the counterfactual where the officer testified in court. I lied in my court affidavit. I made up everything in there. I just was trying to get in Mr. McKinney's house. There would be no remedy. And Frank's make versus Delaware makes clear that that's not the case. And so for all these reasons, we would ask that we have this case for Frank's hearing. Thank you. Thank you, counsel. Counsel, your arguments have been extremely helpful. We appreciate them. And the case will be submitted and counsel excused.